IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-00563-WYD-MJW

JOSEPH C. STEVENS,

　　Plaintiff,

v.

METROPOLITAN LIFE INSURANCE,

　　Defendant.

**ORDER**

THIS MATTER came before the Court on a hearing on October 13, 2006, on Defendant Metropolitan Life Insurance Company's ["MetLife"] Motion for Judgment on the Administrative Record.  The motion seeks judgment on the administrative record relating to Plaintiff's claims for relief under the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §§ 1001-1416 [hereinafter "ERISA"].  For the reasons stated in this Order, the Motion for Judgment on the Administrative Record is granted.

I.　　FACTUAL BACKGROUND

Citibank, N.A. ["Citibank"] makes long-term disability benefits available to eligible employees through its Disability Benefits Plan ["Plan"].  Record ["Rec."] at 47-75. Plaintiff is a 51 year old former employee of Citibank, and began to receive long-term disability benefits under the Plan on May 11, 1993.  MetLife's Br. in Supp. of its Mot. for J. on the Administrative Record ["MetLife's Brief], Undisputed Facts 7 and 8  MetLife

became the Claims Administrator of the Plan on January 1, 2002. *Id.*, Undisputed Fact 9. By letter dated February 22, 2002, MetLife informed Plaintiff that it was "updating the information on [his] claim" and asked Plaintiff to provide various types of information. Rec. at 271-72. By letter dated March 19, 2002, Plaintiff provided MetLife with information regarding his condition. *Id.* at 123-29.

On April 23, 2002, MetLife told Plaintiff that his "claim is currently approved to 4/30/02 and [the] extension of benefits is still in review." MetLife's Brief, Undisputed Fact 20. On May 22, 2002, MetLife extended Plaintiff's disability benefits to June 30, 2002, so that medical records could be obtained. *Id.*, Undisputed Fact 21. By letter of May 29, 2002, MetLife informed Plaintiff's health care provider that it had "recently taken over the handling of [Plaintiff's] disability claim from CNA" and requested medical records. Rec. at 253. By letter dated June 21, 2002, MetLife received from Plaintiff an additional 403 pages of medical records. *Id.* at 223. Plaintiff's benefits were then extended to July 31, 2002. MetLife's Brief, Undisputed Fact 26.

On July 3, 2002, MetLife obtained medical records from Kaiser Permanente. MetLife's Brief, Undisputed Fact 27. It then referred the file to an in-house nurse consultant to "evaluate med[ical] records to see if the[y] support disability." *Id.*, Undisputed Fact 28. The nurse consultant found that her review of the records did not support a finding of disability. *Id.*, Undisputed Fact 31. MetLife then referred the file to Dr. Hopkins, a doctor who was board certified in internal and occupational medicine, to conduct an independent review. *Id.*, Undisputed Facts 31-33. Dr. Hopkins' detailed report of August 20, 2002 (Rec. at 114-120) found that while Plaintiff "may have many

somatic complaints and diagnoses, there is a paucity of evidence in this record of any actual objectively determined findings which would, separately or in combination, support any specific impairment." Rec. at 120. She concluded that "[n]o physical impairment was documented in this record which would preclude [Stevens] from [returning to work], FT, own or any occupation, no restrictions or limitations." *Id.*

On August 22, 2002, MetLife sent the report to Plaintiff's treating physician, Dr. Battalora, and asked her to provide comments or additional information. Rec. at 112. MetLife's letter informed Dr. Battalora that if no response was received by August 30, 2002, it would assume she was in agreement with Dr. Hopkins' report. *Id.* MetLife did not receive a response from Dr. Battalora. MetLife's Brief, Undisputed Fact 50.

On September 9, 2002, MetLife informed Plaintiff of its decision to terminate his claim "on the grounds that [he] no longer meet[s] [his] policy's definition of disability." Rec. at 110-111. The termination letter advised Plaintiff of his right to appeal. *Id.* at 111. Further, MetLife sent Plaintiff all the medical records/reports from its claim file that it reviewed in connection with its termination decision. *Id.* at 261.

Before Plaintiff submitted a written appeal, a report was submitted to MetLife by a speech pathologist relating to Plaintiff's vocal condition. Rec. at 276. That report did not, however, state that Plaintiff was disabled as a result of his vocal condition. Instead, as MetLife pointed out in a letter to Plaintiff wherein it acknowledged receipt of Ms. Perez's report, the report concluded that it was unclear how Plaintiff's voice would prevent him from working, "although it is unlikely he would be able to return to full call-center phone work." *Id.* at 276, 260. A partially completed Physician Questionnaire

from Plaintiff's treating doctor Dr. Read was also received by MetLife.  *Id.* at 248-49.  While that form stated that Plaintiff had functional limitations that prevented him from being able to work (back pain and "unpredictable bowel incontinence"), the form noted that the doctor could not do the actual disability assessment.  *Id.*

On January 30, 2003, Plaintiff notified MetLife by letter that he wished to appeal the decision to terminate benefits.  Rec. at 269.  On February 4, 2003, MetLife acknowledged its receipt of Plaintiff's appeal letter, and notified Plaintiff that the deadline for his submission of materials supporting the appeal was March 18, 2003.  *Id.* at 267-68.  MetLife also informed Plaintiff, "Please keep in mind that medical information submitted in support of your appeal must document functional limitations from the date benefits were terminated."  *Id.* at 267.  "Current medical findings, only, will be insufficient in that regard."  *Id.*  By letter dated March 7, 2003, Plaintiff submitted a written statement supporting his appeal.  *Id.* at 86-107.

MetLife then sent the file to another physician, Dr. Nesta, for an independent review.  MetLife's Brief, Undisputed Fact 71.  By report dated March 25, 2003, Dr. Nesta provided his conclusions.  Rec. at 80-81.  Dr. Nesta agreed with Dr. Hopkins' assessments of Plaintiff in her report, and concluded that he "did not find hard medical documentation which would preclude [Plaintiff's] ability to work."  *Id.* at 81.  By letter dated March 31, 2003, MetLife informed Plaintiff of its decision to uphold its original claim determination.  *Id.* at 76-79.  In so doing, it summarized the evidence in the record and the findings of the two independent physician reviewers, Drs. Hopkins and Nesta.  *Id.*  MetLife concluded that "there are no documented functional limitations

that would preclude [Plaintiff's] ability to return to full time work" and informed Plaintiff that he had exhausted his administrative remedies under the Plan. *Id.* at 78.

II. ANALYSIS

    A. Standard of Review and Request for Discovery

I first address the applicable standard of review. When a plan gives discretionary authority to an administrator to determine eligibility for benefits or to construe the terms of the plan, the denial of benefits can only be overturned if the denial was arbitrary or capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Trujillo v. Cyprus Amax Minerals Co. Retirement Plan Committee*, 203 F.3d 733, 736 (10th Cir. 2000). In the case at hand, the Plan at issue—Citibank's Long-Term Disability Plan—gives discretionary authority to the administrator to determine eligibility for benefits and to construe the terms of the plan. Among other things, the Plan states that the Committee (who is designated as the administrator) "shall have the authority to . . . interpret and construe the provisions of the Plan and to finally decide any matters arising out of the Plan. . . ." Rec. at 62.

Based on the foregoing, I find no merit to Plaintiff's argument that the Plan does not does not give an explicit reservation of discretion to the administrator. I also reject the argument that no authority was given to MetLife by Citibank, as Plaintiff admitted that "MetLife through Synchrony became the Claim Administrator of the Plan on January 1, 2002." MetLife's Brief, Undisputed Fact 9.[1]

---

[1] Plaintiff also argues that no authority was given to Grace Corbin, the Appeals Specialist for MetLife who made the decision to terminate benefits. I find this argument specious. The Plan allows the Committee to designate a person to act as Claims Administrator/Fiduciary with authority to "determine

Plaintiff also asserts that the arbitrary and capricious standard does not adequately address his allegations relative to the bad faith breach of duty owed by MetLife and that Metlife's failure to conduct an independent medical examination constitutes an unreasonable act which recklessly disregarded his rights. Further, he asserts that ERISA is not intended to provide plan administrators with immunity from the reversal of a denial of benefits. These arguments have no merit. They are merely rhetoric and have no substantial evidentiary support in the record. The only inquiry in determining the standard of review is whether the Plan gives the Administrator discretionary authority. The Plan does give such authority to MetLife.

Plaintiff's unsupported argument that the doctors who MetLife retained to perform independent reviews of the file may have a conflict of interest does not provide a basis to change the standard of review. When the plan administrator acts under a conflict of interest, this may be weighed as a factor when the court is deciding whether the decision was arbitrary and capricious. *Charter Canyon Treatment Center v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Here, however, Plaintiff presents no evidence or argument that MetLife, as administrator, had a conflict of interest.

Further, Plaintiff has cited no authority holding that an unsupported allegation of a conflict of interest of an independent doctor retained by the administrator is a factor that can be weighed by the court in connection with its review. The Seventh Circuit has held that it is not, at least where the conflict allegation is unsupported. *See Davis v.*

---

eligibility for benefits and the amount thereof" and to "[p]rovide a written explanation to a Participant whose claims for benefits is denied." Rec. at 63.

*Unum Life Ins. Co. of America*, 444 F.3d 569, 575 (7th Cir.) (even where the administrator retained in-house doctors to review disability claim, this did not create a "review-altering conflict" of interest since Unum was simply "[p]aying for a legitimate and valuable service in order to evaluate a claim thoroughly" and the plaintiff did not show "that the doctors . . . had any specific incentive to derail his claim"), *cert. denied*, ___ S. Ct. ___, 2006 WL 2007574 (2006).

I also deny Plaintiff's request for discovery. When the arbitrary and capricious standard of review applies, the review is limited to the administrative record. *Hall v. Unum Life Ins. Co. of America*, 300 F.3d 1197, 1201 (10th Cir. 2002). In other words, the court is limited to the arguments and evidence before the administrator at the time it made the decision, and may not hold a "de novo" factual hearing on the issue of the claimant's eligibility for benefits. *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380-81 (10th Cir. 1992).

### B. Whether MetLife's Motion Should Be Treated as a Summary Judgment Motion

MetLife's Brief in Support of its Motion for Judgment on the Administrative Record contains a Statement of Undisputed Facts, as required by the Court when the motion seeks summary judgment. Plaintiff contends that the motion should be denied because there are disputed issues of fact. MetLife contends, on the other hand, that the summary judgment standard is not proper and that the Court should decide this case like an administrative appeal based solely on the administrative record.

I agree with MetLife, and decline to treat its motion as a motion for summary judgment. Since the evidence is limited to the administrative record, many courts in

this Circuit have decided ERISA cases in a manner akin to an administrative appeal, and recognized that the summary judgment standard is not the proper means to resolve the case.  *See Panther v. Synthes (U.S.A.)*, 380 F. Supp. 2d 1198, 1207 n. 9 (D. Kan. 2005); *Caldwell v. Life Ins. Co. of North America*, 37 F. Supp. 2d 1254, 1257 (D. Kan. 1998), *rev'd in part on other grounds*, 287 F.3d 1276 (10th Cir. 2002); *Clausen v. Standard Life Ins. Co.*, 961 F. Supp. 1446, 1455 (D. Colo. 1997).  These cases relied on *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 & n. 31 (10th Cir. 1994)), holding that motions for summary judgment are inconsistent with the standard of judicial review of actions in which the court is confined to the administrative record.

I agree with the reasoning of the above cases and decide this case based on the administrative record, without reference to the summary judgment standard. Accordingly, I reject Plaintiff's request that MetLife's motion be denied based on disputed issues of fact.  I also note that to the extent there are disputes, they have been resolved with reference to the administrative record.  Finally, I agree with MetLife that none of Plaintiff's disputed facts are material and affect the decision on the merits.

    C.    <u>Whether MetLife's Decision to Terminate Benefits Was Arbitrary and Capricious</u>

Under the arbitrary and capricious standard, MetLife's decision may not be set aside if it is based on a "reasonable interpretation of the plan's terms and made in good faith."  *Trujillo v. Cyprus Amax Minerals Co. Retirement Plan Committee*, 203 F.3d 733, 736 (10th Cir. 2000).  In other words, "[a] decision to deny benefits is arbitrary and capricious if it is not a reasonable interpretation of the plan's terms."  *McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1259 (10th Cir. 1998).

However, "[t]he reviewing court 'need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.'" *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)). Thus, the decision should "be upheld unless it is 'not grounded on *any* reasonable basis.'" *Id.* (emphasis in original) (quotation omitted). "The Administrator's '"decision need not be the only logical one nor even the best one."'" *Id.* (quoting *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1460 10th Cir. 1991)). "'It need only be sufficiently supported by facts within [the administrator's] knowledge to counter a claim that it was arbitrary or capricious.'" *Id.* (quotation omitted).

In the case at hand, I find that MetLife's decision very clearly falls somewhere on a continuum of reasonableness, and that it is grounded on a reasonable basis, as explained below. MetLife had the authority under the plan to "[p]rovide continuous review of the mental and physical condition of a Participant who is receiving benefits". Rec. at 63. As such, it was not unreasonable for MetLife to decide, when it became administrator, to review Plaintiff's disability determination, even though Plaintiff had been receiving benefits for over nine years.

It is undisputed that in conducting its review, MetLife requested certain documentation from Plaintiff as well as the medical records from Plaintiff's health care provider. MetLife also received additional medical records from Plaintiff. The fact that MetLife did not obtain the file from the prior administrator is not unreasonable, since it obtained Plaintiff's medical records and gave Plaintiff the opportunity to ensure that the

-9-

file was complete. Further, MetLife obviously was not bound by any disability determination by that administrator, and its failure to obtain the file of the prior administrator to review its determination was thus not unreasonable.

The record shows that MetLife appeared to conduct a thorough and careful review of Plaintiffs' continued eligibility for benefits. It first had an in-house nurse consultant review the medical records. When she found that the file did not support a finding of disability, MetLife then obtained an independent review from an outside internist and specialist in occupational medicine. That physician, Dr. Hopkins, also concluded that Plaintiff was not disabled. MetLife gave Plaintiff's treating physician the opportunity to respond to that doctors' report, and received no response. On appeal, MetLife gave Plaintiff the opportunity to submit a detailed statement as to why it erred in its termination decision, and allowed Plaintiff the opportunity to submit whatever additional materials he thought would support the appeal. It then had a second independent doctor conduct a review of the file. That doctor also confirmed that Plaintiff was not disabled, and the appeal was then denied. I find that the above conduct is reasonable.

Plaintiff argues, however, that the termination of benefits was not reasonable because MetLife selected the doctors, the doctors conducted only a paper review of the file, and MetLife failed to obtain an independent medical examination of Plaintiff. Further, he asserts that MetLife did not contact his treating physicians by phone and Dr. Hopkins did not contact them by letter. I agree with the Seventh Circuit's reasoning

in *Davis* that this does not make the decision unreasonable. In rejecting similar arguments made by the plaintiff in that case, the Seventh Circuit stated:

> [N]either the district court nor Davis has cited, and our research has not disclosed, any authority that generally prohibits the commonplace practice of doctors arriving at professional opinions after reviewing medical files. In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation. It is reasonable, therefore, for an administrator to rely on its doctors' assessments of the file and to save the plan the financial burden of conducting repetitive tests and examinations.

*Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 577 (7th Cir.), *cert. denied*, ___ S. Ct. ___, 2006 WL 2007574 (2006); *see also Fought v. Unum Life Ins. Co. of America*, 379 F.3d 997, 1015 (10th Cir. 2004) (independent medical examinations, while helpful, are not required), *cert. denied*, 544 U.S. 1026 (2005).

Plaintiff also argues that MetLife acted unreasonably by not relying on the opinions of his treating physicians. The only evidence in the record that he points to is the Physician Questionnaire of Dr. Read. However, that report was only partially filled out and Dr. Read did not complete the disability assessment required in that form. Thus, it was not unreasonable for MetLife to reject the conclusion in that report that Plaintiff was disabled. Further, MetLife did seek the opinion of another treating physician, Dr. Battalora, and told her that if she failed to respond to Dr. Hopkins' assessment, MetLife would assume she was in agreement with that assessment. Since she did not respond, MetLife could reasonably assume that Dr. Battalora did not disagree with Dr. Hopkins' assessment that Plaintiff was able to work.

Finally, a plan administrator does not have to blindly accept the treating physicians' assessments. As noted in *Davis*, "'courts have no warrant to require administrators automatically to accord special deference to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.'" *Davis*, 444 F.3d at 578 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). "[R]eaching a decision amid . . . conflicting medical evidence is a question of judgment that should be left to [the administrator] under the arbitrary-and-capricious standard." *Id*.

It is also argued by Plaintiff that MetLife acted unreasonably by not ascertaining whether he could return to work while using marijuana for his pain (as allowed by law), or how he was supposed to work in a bull pen type call center with his symptoms, including irritable bowel syndrome with uncontrollable flatulation, loss of stool and incontinence. Related to that is an argument that MetLife unreasonably did not ascertain whether Citibank has an employment personnel policy related to personal hygiene or the use of narcotics while working. I find that these arguments do not make MetLife's decision unreasonable, as explained below.

As to the use of marijuana, MetLife had two independent doctors review the entire medical record to determine whether Plaintiff could work. They found that the record did not support a finding of disability. Plaintiff did not cite anything in the record from the medical evidence that substantiated he was unable to work because he smoked marijuana. Further, Dr. Hopkins noted that Plaintiff's treating physician,

-12-

Finally, a plan administrator does not have to blindly accept the treating physicians' assessments. As noted in *Davis*, "'courts have no warrant to require administrators automatically to accord special deference to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.'" *Davis*, 444 F.3d at 578 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). "[R]eaching a decision amid . . . conflicting medical evidence is a question of judgment that should be left to [the administrator] under the arbitrary-and-capricious standard." *Id*.

It is also argued by Plaintiff that MetLife acted unreasonably by not ascertaining whether he could return to work while using marijuana for his pain (as allowed by law), or how he was supposed to work in a bull pen type call center with his symptoms, including irritable bowel syndrome with uncontrollable flatulation, loss of stool and incontinence. Related to that is an argument that MetLife unreasonably did not ascertain whether Citibank has an employment personnel policy related to personal hygiene or the use of narcotics while working. I find that these arguments do not make MetLife's decision unreasonable, as explained below.

As to the use of marijuana, MetLife had two independent doctors review the entire medical record to determine whether Plaintiff could work. They found that the record did not support a finding of disability. Plaintiff did not cite anything in the record from the medical evidence that substantiated he was unable to work because he smoked marijuana. Further, Dr. Hopkins noted that Plaintiff's treating physician,

Dr. Battalora, actually advised Plaintiff to stop using marijuana on several occasions. Rec. at 114-115.  Finally, there is nothing in the record which demonstrates that Plaintiff could not take some other pain killer while at work.

The remaining arguments of Plaintiff are directed to his work in the bull pen type call center, and the fact that his condition did not allow him to return to such work. However, Plaintiff ignores the fact that the definition of disability in the Plan is that the employee's condition "prevents the participant from engaging in *each and every occupation or employment* . . . for which Employee is reasonably qualified by reason of education, training or experience may reasonably become qualified."  Rec. at 51-52 (emphasis added). Plaintiff has not shown from the record that his condition would prevent him from any work for which he is reasonably qualified.

Finally, Plaintiff argues that MetLife's decision was unreasonable because it did not weigh the fact that Plaintiff was found to be disabled by the Social Security Administration.  I disagree, and find that this does not make MetLife's determination unreasonable.  *See Nord*, 538 U.S. at 833 ("[i]n determining entitlement to social security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria". . . . "the validity of a claim to benefits under an ERISA plan,' on the other hand, 'is likely to turn,' in large part, 'on the interpretation of terms in the plan at issue'" (quotation omitted).

### III.   CONCLUSION

In conclusion, I find that MetLife's decision was reasonable, and that its termination of benefits was not arbitrary and capricious.  Accordingly, it is

ORDERED that Defendant's Motion for Judgment on the Administrative Record is **GRANTED**.  The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff.  It is

FURTHER ORDERED that the trial set to commence May 14, 2007, and the final trial preparation conference set for May 4, 2007, are **VACATED**.

Dated:  October 20, 2006

                                    BY THE COURT:

                                    s/ Wiley Y. Daniel
                                    Wiley Y. Daniel
                                    U. S. District Judge